**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**JEFFREY L. SHERMAN,**

                       **Plaintiff,**                    **REPORT AND**
                                                             **RECOMMENDATION**

                  **-against-**                       **02-CV-6556 (ERK)**

**PLATINUM FITNESS LIFESTYLE,**
**LTD., et al.,**

                       **Defendants.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       On December 16, 2002, plaintiff Jeffrey L. Sherman ("plaintiff" or "Sherman") commenced this employment discrimination action against various defendants, including Kathleen Lohmann ("defendant" or "Lohmann"). By order entered on March 27, 2006, the Honorable Edward R. Korman adopted this Court's recommendation that a default judgment be entered against Lohmann, and on January 31, 2007, he referred the matter back to this Court for an inquest on damages. For the following reasons, this Court recommends that judgment be entered against Lohmann in the amount of $137,099.00 in back pay; pre-judgment interest on that amount, at the rate of nine percent per annum from December 31, 2003; $12,000.00 in attorney's fees; and $770.10 in costs.

**FACTUAL BACKGROUND**

       Plaintiff alleges that Lohmann and others discriminated against him on account of his religion and terminated his employment in retaliation for his complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, and/or other federal, state and local laws, including the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*

("NYCHRL"). See generally Amended Complaint ("Am. Compl.").[1] After Judge Korman granted defense counsel's motion to withdraw, Lohmann took no further action in defense of this action and never responded to plaintiff's motion for default judgment. Judge Korman entered a default judgment against her. Although directed to respond to plaintiff's inquest submissions, she failed to do so.

Plaintiff now requests an award of $137,099.00 in back pay for the period from 2001 through 2003; pre-judgment interest calculated at nine percent per annum from December 31, 2003; $21,299.50 in attorney's fees; and $1,272.86 for expenses incurred in litigating his claims.

## DISCUSSION

**I.  Damages**

**A. Legal Basis For Awarding Back Pay**

While plaintiff initially sought relief under a number of federal civil rights statutes as well as New York State's and City's Human Rights Laws, plaintiff's inquest submission relies exclusively on NYCHRL,[2] which provides, in pertinent part, that:

> any person claiming to be aggrieved by an unlawful discriminatory practice . . . or by an act of discriminatory harassment . . . shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages,  . . . and such other remedies as may be appropriate . . . .

N.Y.C. Admin. Code § 8-502(a).  "The [NYCHRL] prohibits discriminatory practices not only by an 'employer,' but also by 'an employee or an agent thereof,' and thus provides for the individual liability of employees regardless of ownership or decision-making power."  Jong-Fwu v. Overseas Shipholding Group, Inc., No. 00-CV-9682 (DLC), 2002 WL 1929490, at *7

---

[1]  Prior to commencing this suit, plaintiff had obtained an Equal Employment Opportunity Commission ("EEOC") right-to-sue letter.  See Am. Compl. ¶ 152.

[2]  See Memorandum of Law In Support of Plaintiff's Damages ("Pl. Mem.") at 2 n.1.

-2-

(S.D.N.Y. Aug. 21, 2002) (citing Murphy v. ERA United Realty, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)). Having defaulted, Lohmann is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)), and thus plaintiff is entitled to recover from her for violating NYCHRL.

### B. Length Of Damages Period

Plaintiff seeks to recover as back pay his weekly salary of $1,250.00, starting from the date of his wrongful termination in April 2001, through 2003, when he successfully mitigated his damages by operating his own business. See Declaration of Jeffrey L. Sherman In Support of Plaintiff's Damages ("Sherman Decl.") ¶¶ 8-12; see generally Beame v. DeLeon, 639 N.Y.S.2d 272, 276 (1995) (back pay is one of the available remedies under NYCHRL; citing N.Y.C. Admin. Code § 8-120(a)(2)).[3] However, plaintiff's demand for back pay presents an issue regarding his voluntary relocation to Seattle, Washington in October 2001, after working as a commissions-based independent contractor for Freedom Systems from June 2001 through September 11, 2001. See Sherman Decl. ¶ 5. Plaintiff reportedly left Freedom Systems, and New York, because he could not earn enough money to continue to live in New York. See Supplemental Declaration of Jeffrey L. Sherman In Support of Plaintiff's Damages ("Supp. Sherman Decl.") ¶¶ 2-3.

Prevailing federal precedents uniformly hold that "a decision to forego comparable employment for personal reasons, however understandable, constitutes a failure to mitigate

---

[3] Although promised commissions, plaintiff is not now requesting unpaid commissions, as defendants' default has impeded his ability to quantify the commissions owed. See Sherman Decl. ¶ 3.

damages as a matter of law." Griffin v. Four Seasons Resorts & Hotels, Ltd., No. 96-CV-4759 (JSR), 1999 WL 212679, at *1 (S.D.N.Y. Apr. 12, 1999) (collecting cases); see Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 696 (2d Cir. 1998) ("A claimant who voluntarily resigned from comparable employment for personal reasons would not have adequately mitigated damages . . . ."); Dominic v. Consolidated Edison of N.Y., Inc., 822 F.2d 1249, 1258 (2d Cir. 1987) (if plaintiff refuses a substantially equivalent job, his back-pay award is cut off or reduced at the time of his failure to mitigate); see also EEOC v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992) (failure to mitigate where plaintiff quit job "for personal reasons, including her health and the need to spend more time with her daughter"); Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1278 (4th Cir. 1985) (failure to mitigate where plaintiff's decision to quit job "is motivated by personal reasons unrelated to the job or as a matter of personal convenience"); Meyer v. United Airlines, Inc., 950 F.Supp. 874, 877 (N.D. Ill. 1997) (failure to mitigate where plaintiff's decision to quit job and pursue part-time rather than full-time employment "was based on personal considerations relating to child-care"); Sennello v. Reserve Life Ins. Co., 667 F.Supp. 1498, 1519 (S.D. Fla. 1987) (failure to mitigate during period of unemployment due to "onset of a tumor-related illness which rendered [plaintiff] incapable of work"). New York case law largely follows federal principles of mitigation. See, e.g., Griffin v. William M. Mercer, Inc., No. 101146/96, 1998 WL 1050968, at *12 (Sup. Ct. N.Y. County Mar. 25, 1998) (plaintiff who voluntarily quits alternative employment without good reason has failed to mitigate) (quoting Reilly v. Cisneros, 835 F.Supp. 96, 99 (W.D.N.Y. 1993), aff'd per curiam, 44 F.3d 140 (2d Cir. 1994)). Further judicial precedent supports terminating the back pay period once a claimant moves beyond the vicinity of the labor market for a reason that is not job-related. See Matthews v. A-1, Inc., 748 F.2d 975, 978 n.5 (5th Cir. 1984) (citing Di Salvo v. Chamber of

Commerce of Greater Kansas City, 568 F.2d 593, 597-98 (8th Cir. 1978)).

Nevertheless, as plaintiff correctly notes, see 6/14/07 Letter to the Court from Salvatore G. Gangemi, "a voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment." Hawkins, 163 F.3d at 696 (quoting Delight Wholesale, 973 F.2d at 670); accord Brady, 753 F.2d at 1278. Plaintiff's uncontroverted supplemental declaration sufficiently establishes that plaintiff's departure from Freedom Systems and New York was precipitated by economic factors and related to his continuing search for comparable employment. See Supp. Sherman Decl. ¶¶ 2-4. Plaintiff started his own business, Zone Seattle, Inc., in August 2002 and has fully mitigated his losses since 2004. See Sherman Decl. ¶¶ 7, 11; Supp. Sherman Decl. ¶¶ 5-6. "Self-employment, if it is undertaken in good faith and is a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation." Hawkins, 163 F.3d at 696 (collecting cases). In light of plaintiff's continued attempts to mitigate his damages, the relevant period for back pay should continue through his relocation, until he succeeded in his mitigation efforts in 2004. See, e.g., Delight Wholesale, 973 F.3d at 670-71 (district court properly declined to toll the back pay award when plaintiff left her interim position "for non-personal business reasons that included a need to search for better-paying employment.").

For 2001, 2002 and 2003, plaintiff seeks mitigated damages in the amounts of $42,903.00, $63,035.00 and $31,161.00, respectively, calculated at $1,250.00 per week, minus the income earned by plaintiff through alternative employment. See Sherman Decl. ¶¶ 8-10; Ex. JS-1, Ex. JS-2 and Ex. JS-3.[4] As plaintiff has substantiated his entitlement to those amounts, he

---

[4] "JS-[#]" refers to the specified exhibit to the initial declaration of Jeffrey Sherman.

should be awarded $137,099.00 in back pay.

**C. Pre-Judgment Interest**

Plaintiff also seeks pre-judgment interest on the damage award. In order to make prevailing plaintiffs whole, courts have awarded pre-judgment interest to victims of discrimination suing under NYCHRL. See Hill v. Airborne Freight Corp., 212 F.Supp.2d 59, 78 (E.D.N.Y. 2002) (pre-judgment interest awarded); Osorio v. Source Enters., Inc., No. 05-CV-10029 (JSR), 2007 WL 683985, at *2, 5 n.3 (S.D.N.Y. Mar. 2, 2007) (awarding $5,060.19 in pre-judgment interest); McIntyre v. Manhattan Ford, Lincoln-Mercury, 672 N.Y.S.2d 230, 236 (Sup. Ct. N.Y. County 1997) (citing, *inter alia*, Tiffany & Co. v. Smith, 638 N.Y.S.2d 454 (1st Dep't 1966)); see also N.Y. C.P.L.R. § 5001(a). In this case, rather than request pre-judgment interest from various dates, starting in 2001, when his weekly salary became payable, plaintiff "seek[s] such interest at the rate of 9% per annum from December 31, 2003 to the date of final judgment." Sherman Decl. ¶ 12.

In an analogous context, "New York courts apply the New York statutory rate of interest to calculate pre-judgment interest for employment discrimination back pay verdicts decided under the New York [State] Human Rights Law." Epstein v. Kalvin-Miller Int'l., Inc., 139 F.Supp.2d 469, 486 (S.D.N.Y. 2001) (citing McIntyre, 672 N.Y.S.2d at 235-36, and State Div. of Human Rights v. Gissha White Plains Corp., 484 N.Y.S.2d 603, 604 (2d Dep't 1985)). In light of the similarities in the two laws, and the principle that the NYCHRL should be construed in a manner consistent with its state counterpart, that rule applies with equal force here. See Robins v. Max Mara, U.S.A., 923 F.Supp. 460, 471 (S.D.N.Y. 1996).

The New York statutory rate of interest is nine per cent per annum, see N.Y. C.P.L.R. § 5004, calculated on a simple interest basis. See Epstein, 139 F.Supp.2d at 486 (citing, *inter alia*,

Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998)). Accordingly, this Court would award plaintiff pre-judgment interest at the rate of nine percent per annum on his back pay award of $137,099.00, calculated from December 31, 2003. See N.Y. C.P.L.R. § 5004; see also McIntyre, 672 N.Y.S.2d at 236-37.

## II. Attorney's Fees and Costs

Plaintiff also requests $21,299.50 in attorney's fees and $1,272.86 for expenses incurred in the prosecution of his claims. NYCHRL allows "the court, in its discretion, [to] award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8-502(f).

### A. Attorney's Fees

"In determining reasonable attorneys' fees in discrimination cases, . . . [New York] City's Administrative Code and Federal Title VII standards are substantially identical." Bell v. Helmsley, 2003 WL 21057630, at *1 (Sup. Ct. N.Y. County Mar. 27, 2003) (citations omitted). Consequently, courts considering fee applications under New York State and/or municipal law have looked to federal decisions on attorney's fees for guidance. See, e.g., id.; Ross v. Congregation B'nai Abraham Mordechai, 814 N.Y.S.2d 837, 842 (N.Y. Civ. Ct. 2006).

To calculate an appropriate fee award, courts in the Second Circuit apply the "presumptively reasonable fee" method (formerly the "lodestar" method), multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 163 (2d Cir. 2007). "The reasonable hourly rate is the rate a paying client would be willing to pay." Id. at 169. To determine a reasonable hourly rate, the Court must consider the twelve factors

enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),[5] in addition to "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 484 F.3d at 169; see Bell, 2003 WL 21057630, at *1-2 (state court enumerates *Johnson* factors). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

In support of his request for attorney's fees, plaintiff's attorney, Salvatore G. Gangemi, has submitted detailed documentation of the 84.6 hours of work he performed over the course of (and leading up to[6]) this litigation. See Declaration of Salvatore G. Gangemi In Support of Plaintiff's Request for Damages ("Gangemi Decl.") at ¶ 7; Ex. SG-1 [7] and SG-2 (detailing time charges). He has also provided information concerning his hourly rates, which ranged from

---

[5] The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 484 F.3d at 166 n.1 (citing Johnson, 488 F.2d at 717-19).

[6] See pp. 11-12 & note 9.

[7] "SG-[#]" refers to the specified exhibit to the Gangemi Declaration.

$225.00 in 2001 until the middle of 2003, and then increased each year to his current rate of $325.00. See Gangemi Decl. ¶ 7.

Plaintiff did not, however, agree to pay counsel in accordance with his hourly rate. On the contrary, plaintiff and his attorney entered into a contingency fee agreement, pursuant to which the attorney's fee would be one-third of any "gross recovery," "whether the matter was resolved by settlement or judgment . . . ." Gangemi Decl. ¶ 4. Nevertheless, as the state court observed in Bell v. Helmsley, which also involved a fee application under Administrative Code § 8-502(f): "[A] contingent fee does not, in and of itself, constitute a limitation on recovery." 2003 WL 21057630, at *1 (citing, *inter alia*, Blanchard v. Bergeron, 489 U.S. 87 (1989)). Instead, "a fee agreement is one factor among many that the court will consider in assessing reasonable attorney fees." Ross, 814 N.Y.S.2d at 842 (collecting cases); accord In re Estate of Rose BB, 826 N.Y.S.2d 791, 794 (3d Dep't 2006).

Apart from noting his concentration in the field of employment (and discrimination) law since his admission to the bar in 1994, see Gangemi Decl. ¶ 2, Mr. Gangemi has provided no information concerning the reasonableness of the hourly rates that he asks the Court to apply in awarding fees in this case. The Court is aware of recent decisions in which courts have sustained hourly rates similar to Mr. Gangemi's for "seasoned civil rights litigators" at the partner level in New York City. See, e.g., Bell, 2003 WL 21057630, at *5 (noting, in state NYCHRL case, that "recent cases involving attorneys' fees in this community range from $250 to $375 per hour," and citing federal cases). Nevertheless, as Mr. Gangemi was apparently the only individual who worked on the case, his time sheets reflect services that could have been

performed more economically by an associate or even a paralegal.[8] It would be unreasonable to compensate Mr. Gangemi at a partner's billing rate for work that, in the marketplace, is ordinarily performed by persons commanding much lower rates. His recoverable fees should therefore be discounted. See, e.g., Davis v. N.Y. City Housing Auth., No. 90-CV-628 (RWS), 2002 WL 31748586, at *3-4 (S.D.N.Y. Dec. 6, 2002) (discounting attorney's rate for work, such as preparing exhibits and proofreading, that could have been done by paralegal); Bell, 2003 WL 2105760, at *4 (state court "reclassifie[s] [353.5] hours attributable to [a partner] as associate hours due to the nature of the services performed"); see also Video Aided Instruction, Inc. v. Y&S Express, Inc., No. 96-CV-518 (CBA), 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's billable hours by half where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Plaintiff's counsel's time records clearly delineate the tasks performed and thus enable the Court to assess the reasonableness of the number of hours expended. The time spent in connection with this lawsuit appears to be reasonable and does not reflect "excessive, redundant or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). However, over 17 hours of Mr. Gangemi's time charges (aggregating at least $3,897.00) apparently involved work in connection with plaintiff's EEOC administrative complaint, a prerequisite to

---

[8] See, e.g., Gangemi Decl. SG-1 and SG-2 entries for: 6/18/01 (1.4 hours spent "analyz[ing] transcripts of tape recording"); 8/7/01 and 8/13/01 (3.4 hours preparing for, drafting and revising EEOC affidavit); 11/30/01 and 12/3/01 (5.8 hours performing legal research, and analyzing documents, concerning single employer doctrine); 12/3/01 (7.3 hours drafting and revising complaint); 2/1/02-2/27/02 (6.3 hours drafting and revising rebuttal to respondent's position statement); 3/7/03 (3.2 hours examining public records regarding successor corporation); 3/11/03 (1.2 hours preparing and drafting amended complaint); 2/3/04 (5.4 hours preparing and drafting discovery requests); 3/23/05 (2.9 hours drafting default motion); 11/4/05 (2.2 hours preparing and drafting default motion re Lohmann); 3/2/07 (2.5 hours researching inquest issues); 3/4/07, 3/5/07, 3/6/07 and 3/7/07 (8.1 hours preparing for and drafting inquest submissions).

filing his Title VII claim against the corporate defendant.[9] See generally 42 U.S.C. § 2000e-5.

To be sure, under federal law, the "time spent before an administrative agency is compensable under a fee shifting statute if the administrative remedy is a prerequisite to the lawsuit." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 282 (2d Cir. 1987) (citing N.Y. Gaslight Club, Inc. v. Carey, 477 U.S. 54, 65, 71 (1980)). In contrast, NYCHRL does not require exhaustion of administrative remedies.[10] Plaintiff cites no basis for awarding him fees for work performed in connection with the EEOC complaint against the corporate defendant, and this Court is unaware of none. See also N.Y.C. Bd. of Educ. v. Sears, 443 N.Y.S.2d 23 (2d Dep't 1981) (court *sua sponte* strikes award of attorney's fees, under New York State Human Rights Law, for work related to administrative proceeding). Therefore, those fees should be disallowed.

Furthermore, as 40 of the remaining approximately 67 hours at issue should be billed at a substantially lower rate,[11] this Court, having considered the *Johnson* factors,[12] recommends

---

[9] See Gangemi Decl. Ex. SG-1 entries for: 8/7/01 (3.2 hours/$720.00); 8/13/01 (0.2 hours/$45.00); 8/27/01 (1.0 hours/$225.00); 9/5/01 (0.5 hours/$112.50); 10/4/01 (0.3 hours/$67.50); 10/11/01 (0.1 hours/$22.50); 10/24/01 (0.3 hours/$67.50); 10/29/01 (0.6 hours/$135.00); 12/27/01 (0.2 hours/$45.00); 1/21/02 (two entries totaling 0.9 hours/$202.50); 1/25/02 (0.62 hours/$139.50); 2/1/02-2/27/02 (6.3 hours/$1,417.50); 2/14/02 (two entries totaling 0.5 hours/$112.50); 2/15/02 (0.3 hours/$67.50); 2/20/02 (1.9 hours/$427.50); 4/10/02 (0.2 hours/$45.00); and 5/23/02 (0.2 hours/$45.00).

[10] Indeed, the filing of a complaint with the city commission on human rights or state division of human rights ordinarily constitutes an election of remedies that bars a lawsuit under NYCHRL. See N.Y.C. Admin. Code § 8-502(a); Fleury v. N.Y.C. Transit Auth., No. 02-CV-5266 (SJF)(LB), 2004 WL 2810107, at *6 (E.D.N.Y. Dec. 8, 2004).

[11] See Bell, 2003 WL 21057630, at *5-6 (awarding hourly rates of $200 for senior associates, $150 for junior associates, and $75 for paralegals). Because the Court has deducted the time charges for 8/7/01, 8/13/01, and 2/1/02-2/27/02 as related to the EEOC administrative proceeding, see *supra* p. 11-12 & note 9, those entries have not been taken into account in

(continued...)

that Lohmann be required to pay attorney's fees in the reduced amount of $12,000.00.

   **B. Costs**

   Plaintiff has submitted an itemized list of expenses totaling $1,272.86. See Gangemi Decl. ¶ 9; Ex. SG-3. Of these expenses, $148.67 relate to work in connection with the EEOC proceeding[13] and, for the reasons discussed above, should be disallowed. Most of the remaining expenses consist of filing fees and service costs, postage, shipping, and copying costs; as the amounts sought are reasonable, these costs are recoverable under section 8-502(f). See generally Bell, 2003 WL 21057630, at *6-7.

   Plaintiff also seeks reimbursement for $326.59 in online legal research fees.[14] Although the Second Circuit has concluded that, "in the context of a [federal] fee-shifting provision, the charges for such online research may properly be included in a fee award" if the attorney that incurred the expense "normally bills its paying clients for the cost of online research services," Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004), federal courts within this circuit have split over whether to allow recovery of such costs in particular cases. Compare Insinga v. Coop. Centrale Raiffeisen Boerenleenbank B.A., 478 F.Supp.2d 508, 512-513 (S.D.N.Y. 2007) ("[C]harges for such online research may

---

[11](...continued)
calculating the number of hours subject to discounted rates.

[12] As the Gangemi Declaration provides little information to guide the Court's analysis of the *Johnson* factors, the Court has relied upon its own experience and knowledge in making its assessment.

[13] See Gangemi Decl. Ex. SG-3 entries for: 9/5/01 ($13.00); 1/11/02 ($79.95); 1/11/02 ($13.00); 1/21/02 ($15.25); 2/15/02 ($11.25); 2/26/02 ($14.50); 2/26/02 ($1.72).

[14] See Gangemi Decl. Ex. SG-3 entries for: 3/1/03 ($26.31); 9/1/03 ($126.24); 10/1/03 ($135.90); 11/25/03 ($31.20); 1/31/04 ($6.94).

properly be included in a fee award."); Banco Central Del Paraguay v. Paraguay Humanitarian Found., Inc., No. 01-CV-9649 (JFK), 2007 WL 747814, at *3 (S.D.N.Y. Mar. 12, 2007) ("[R]eimbursement of Westlaw legal research costs is appropriate."); James v. Nat'l R.R. Passenger Corp., 2005 U.S. Dist. LEXIS 5401, 02-CV-3915 (RJH)(AJP), at *67 (S.D.N.Y. Mar. 30, 2005) ("Legal research costs are recoverable in an application for attorneys' fees."); Raniola v. Bratton, No. 96-CV-4482 (MHD), 2003 WL 1907865, at *8 n.13 (S.D.N.Y. Apr. 21, 2003) (awarding cost of Westlaw research because, "absent the use of computer research, the awarded attorney's fees would probably be larger") (internal citation omitted); and Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95-CV-8833 (RPP), 2002 WL 1733681, at *15 (S.D.N.Y. July 26, 2002) ("[W]here an attorney ordinarily charges computer research expenses separately to clients (rather than treating it as part of overhead), such expenses should be reimbursed in an award of attorney's fees."), with DCH Auto Group (USA) Inc. v. Fit You Best Auto., Inc., No. 05-CV-2973 (NG)(JMA), 2006 WL 279055, at *3-4 (E.D.N.Y. Jan. 10, 2006) ("In the Eastern District of New York, however, courts routinely 'disallow applications for electronic research costs.'") (collecting cases; citing, *inter alia*, King v. JCS Enters., Inc., 325 F.Supp.2d 162 (E.D.N.Y. 2004)).

This Court need not, however, decide whether to depart from the path taken by other judges in this district. This case involves the interpretation of section 8-502(f) of NYCHRL. The Court has located only one case addressing the recoverability of online research charges under that provision, and there the state court declined the request in its entirety "as an item of overhead." Bell, 2003 WL 21057630, at *7 (citing federal cases). This Court therefore recommends that an additional $326.59 in expenses be disallowed, resulting in an award of

$770.10 in costs (after further subtracting $148.67 for costs in connection with the EEOC proceeding).

## **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that plaintiff be awarded damages as follows: back pay in the amount of $137,099.00; pre-judgment interest on the back pay accruing at a rate of nine percent per annum from December 31, 2003; attorney's fees in the amount of $12,000.00; and costs in the amount of $770.10.

Any objections to the recommendations in this Report and Recommendation must be filed with the Honorable Edward R. Korman, on or before July 17, 2007. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system and mail a copy to defendant at her last known address:

> Kathleen Lohmann
> 3 Garden Drive
> Stony Brook, New York 11790

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 2, 2007**

> **ROANNE L. MANN**
> **UNITED STATES MAGISTRATE JUDGE**